DELL, Chief Judge!
Florida Insurance Guaranty Association (FIGA) brings this appeal as receiver of Mission National Insurance Company (Mission National). Mission National insured Scrap Metal Processing, Inc. (Scrap Metal). Ap-pellee Cheri Jacques obtained a $125,000 judgment for personal injuries against Scrap Metal. FIGA contends the trial court erred in holding it responsible for the unpaid portion of Jacques’ judgment and in awarding her attorney’s fees. Jacques cross-appeals the trial court’s denial of her claim for interest on this judgment. We affirm the judgment and the trial court’s denial of interest. We reverse the award of attorney’s fees.
Scrap Metal maintained several insurance policies: a $1,000,000 comprehensive general liability policy with Mission- National, a $10,-000,000 umbrella policy also with Mission National and a $1,000,000 business automobile policy with Continental Casualty Company (Continental). The Mission National $1,000,000 liability policy is at issue in this appeal. This policy was subject to the following $250,000 deductible: “The deductible amount shall be applicable to each occurrence and shall include loss payments and claim expenses, whether or not loss payment is made.”
A truck operated on Scrap Metal’s behalf was involved in a motor-vehicle collision in which Jacques sustained personal injuries and her passenger, Michael Serano, died. Jacques and Serano’s Estate sued Scrap Metal and others for damages. During the course of litigation, Continental settled with Jacques for $40,000 and with Serano’s Estate for $250,000. At the time, Continental represented that it had liability limits of $250,000 per person and $500,000 per occurrence. As *102 part of the settlement, Jacques agreed she would not execute on any later-obtained judgment against Scrap Metal or Continental. Continental agreed, however, that Jacques and Serano’s Estate could proceed with the trial to obtain a damages award and then pursue a judgment against FIGA (receiver of Mission National) for damages awarded in excess of the Continental settlement.
The jury awarded Jacques $125,000 and Serano’s Estate $392,000. The trial court entered judgment solely against Scrap Metal. Thereafter, Continental informed the parties that it had liability limits of $500,000 per person/$l,000,000 per occurrence rather than $250,000 per person/$500,000 per occurrence as previously represented. In light of this discovery, Continental agreed to satisfy the entire judgment in favor of Serano’s Estate. Continental refused, however, to pay Jacques the entire amount of her judgment because she settled for less than the amount of coverage available to her under its policy.
Jacques then sued FIGA for $85,000, the unpaid balance of the $125,000 judgment. A nonjury trial of Jacques’ claim against FIGA resulted in a verdict for Jacques of $84,900 (the $85,000 judgment less FIGA’s $100 statutory deductible). After a hearing on Jacques’ motion for attorney’s fees and interest, the trial court assessed attorney’s fees against FIGA pursuant to section 627.428, Florida Statutes, but denied her claim for interest on the judgment.
FIGA contends that it has no liability for the unpaid portion of Jacques’ judgment because Scrap Metal faded to satisfy the deductible provision of Mission National’s policy.[1] We disagree.
Continental’s payments to the Serano Estate of $392,000 and to appellee of $40,000 satisfied the $250,000 per occurrence deductible provision of the Mission National policy. Appellant has not cited nor have we found any policy provision or legal authority that would require Scrap Metal itself to have had to make the payments covering the deductible. In Fortune Ins. Co. v. McGhee, 571 So.2d 546 (Fla. 2d DCA 1990), the court held that a PIP deductible could properly be exhausted by other sources and need not be paid directly by the insured. We see no reason not to apply the reasoning of Fortune to the policy sub judiee.
Moreover, the parties do not dispute that the unpaid balance of the final judgment constitutes a “covered claim” under section 631.57(l)(b), Florida Statutes, which provides that FIGA shall “[b]e deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer....” Since Scrap Metal satisfied the deductible through Continental’s payments and the $85,000 is a covered claim, we hold the trial court did not err when it entered judgment against FIGA for $84,900.
Appellant also contends that the trial court erred in entering judgment because appellee had released Scrap Metal from liability and because appellee’s judgment against Scrap Metal was unreasonable, collusive and not in good faith. Appellee correctly points out that during the nonjury trial on coverage, FIGA did not raise any of these issues.
We do find merit in FIGA’s contention that the trial court erred in awarding Jacques’ attorney’s fees. The trial court based its award upon sections 631.70 and 627.428, Florida Statutes. Even though FIGA denied coverage by affirmative action, appellee concedes “there was no underlying entitlement to fees pursuant to Section 627.428, Florida Statutes, under the circumstances of this case.” We agree. Therefore, the award of attorney’s fees to Jacques must be reversed.
On cross-appeal appellee contends she sought postjudgment interest below and the trial court erred when it refused to award her interest from the date of the underlying judgment. The record shows that appellee moved for interest on the unpaid portion of her $125,000 judgment against Scrap Metal from the date of that judgment in 1988. However, appellee did *103 not obtain judgment against FIGA until 1992. Any interest sought before the trial court entered judgment against FIGA constitutes prejudgment interest as to FIGA.
Section 631.57(l)(b), Florida Statutes, provides in pertinent part:
(1) The association shall:
(b) Be deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. In no event shall the association be hable for any penalties or interest.
Thus, although FIGA may be hable for post-judgment interest, it is not hable for prejudgment interest. Florida Community Health Center v. Ross, 590 So.2d 1037, 1039 (Fla. 1st DCA 1991); Florida Ins. Guaranty Ass’n v. Gustinger, 390 So.2d 420, 421 (Fla. 3d DCA 1980).
We recognize that in Palm Beach Co. School Board v. Montgomery, 641 So.2d 183 (Fla. 4th DCA 1994), this court held that prejudgment interest is awardable from the time damages become fixed by a jury on the date of the verdict. In Montgomery, this court rehed upon Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985). The Eleventh Circuit, however, has addressed the apphcation of Argonaut in the context of a suit against FIGA:
Appellee rehes on Argonaut ..., in which the Florida Supreme Court held that when damages are liquidated and fixed as of a prior date, interest is merely another element of pecuniary damages and should follow from that date. Argonaut did not involve an action brought by or against FIGA, however, which as the state-created insurer is subject to special rules specifically formulated by the Florida legislature.
FIGA v. R.V.M.P. Corp., 874 F.2d 1528, 1532 (11th Cir.1989). The court held FIGA could not be hable for any prejudgment interest. Id. at 1533. Therefore, the trial court did not err when it denied appellee’s claim for prejudgment interest.
Accordingly, we affirm the $84,900 judgment in favor or Jacques and the trial court’s order denying her claim for prejudgment interest. We reverse the award of attorney’s fees.
AFFIRMED IN PART; REVERSED IN PART.
KLEIN, J„ and OWEN, WILLIAM C., Jr., Senior Judge, concur.

. We do not address FIGA’s argument that the trial court erred in its proration of the liability among the insurers. The record shows that FIGA did not raise this point in the lower tribunal, and thus did not preserve this issue for appellate review.