823 So.2d 110 (2002)
AMERACE CORPORATION, Petitioner,
v.
Gary E. STALLINGS, et ux., Respondents.
No. SC00-565.
Supreme Court of Florida.
June 13, 2002.
*111 Frank H. Gassler, Hala A. Sandridge, and Charles Tyler Cone of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, FL, for Petitioner.
Robert Fraser and Daniel F. Pilka of Pilka & Associates, P.A., Brandon, FL, for Respondents.
Warren B. Kwavnick of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, Florida, for FL Defense Lawyers' Association, Amicus Curiae.
PER CURIAM.
We have for review the Second District Court of Appeal's opinion in Amerace Corp. v. Stallings, 753 So.2d 592 (Fla. 2d DCA 2000), which expressly and directly conflicts with the First District Court of Appeal's opinions in Rockman v. Barnes, 672 So.2d 890 (Fla. 1st DCA 1996), and Easkold v. Rhodes, 632 So.2d 146 (Fla. 1st DCA 1994), on the issue of whether a plaintiff in a personal injury case may recover interest from the date of the verdict through the date of the judgment. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we hold that interest is not recoverable until judgment is entered.

BACKGROUND
Respondent Gary E. Stallings and his wife brought a personal injury action against Amerace Corporation ("Amerace"),[1] and on June 13, 1998, the jury awarded the Stallingses a verdict of $1 million,[2] but found Stallings' employer 60% at fault. On June 22, 1998, Amerace filed a renewed motion for directed verdict, motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial.
On July 9, 1998, the Stallingses filed a motion and memorandum of law in which they included a request for "interest on the entire verdict amount and prejudgment interest at the legal interest rate *112 after the verdict was rendered on June 13, 1998." On November 5, 1998, the court entered an order denying Amerace's motions, except as to the amount awarded for medical bills, for which the court ordered a remittitur. On November 12, 1998, the Stallingses filed a notice of acceptance of remittitur of $196,940.02, in accordance with the court's order of November 5, 1998.[3]
The trial court entered final judgment on November 18, 1998, and on December 7, 1998, the trial court held a hearing on the Stallingses' motions for costs and prejudgment interest. At that hearing, the Stallingses argued that they were entitled to interest from the date of the June 13 verdict until the date of the November 18 judgment. The court entered an amended final judgment on December 22, 1998, but denied the Stallingses' request for interest between the verdict date and the final judgment date.
Amerace appealed, raising several issues challenging the jury verdict. The Stallingses cross-appealed, seeking review of the trial court's denial of their claim for interest between the date of the verdict and the date of the entry of the final judgment. The Second District "affirm[ed] the final judgment in all respects except the issue of prejudgment interest," explaining:
Once a jury has fixed the amount of a plaintiff's damage by its verdict, the plaintiff is entitled to interest on that amount, and the interest is to be included in the final judgment. See Palm Beach County Sch. Bd. v. Montgomery, 641 So.2d 183 (Fla. 4th DCA 1994); Leigh M. Fisher, P.A. v. Ackerman, 744 So.2d 582 (Fla. 2d DCA 1999).
We, therefore, remand to the trial court for entry of an award of prejudgment interest.
Amerace Corp., 753 So.2d at 593.
The holding in Amerace conflicts with the holdings in Easkold and Rockman. In Easkold, the First District reversed a trial court's award of interest from the date of the verdict:
The next question is when the interest started running. The trial court held that the interest runs from the date of the jury verdict. This was error. Post-judgment interest begins to run when the judgment has been filed with the clerk of the court. See, e.g., Allstate Ins. Co. v. Powell, 513 So.2d 802 (Fla. 4th DCA 1987), review denied mem., 520 So.2d 585 (Fla.1988). Appellant's argument that this rule does not pertain in cases decided by jury is not persuasive. See, e.g., Smith v. Dunning, 467 So.2d 465 (Fla. 1st DCA 1985) (holding that interest cannot be allowed before entry of judgment in a tort case decided by jury).
632 So.2d at 147. In Rockman, the First District reaffirmed its holding in Easkold. See 672 So.2d at 891.

ANALYSIS
The issue in this case is whether a plaintiff should be entitled to recover postverdict prejudgment interest in a personal injury action from the time period between when a jury verdict is rendered and when a final judgment is entered. Historically, plaintiffs in personal injury cases have not been entitled to prejudgment interest. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985); Zorn v. Britton, 120 Fla. 304, 162 So. 879 (1935); Farrelly v. Heuacker, 118 *113 Fla. 340, 159 So. 24 (1935). As we explained in Lumbermens Mutual Casualty Co. v. Percefull, 653 So.2d 389, 390 (Fla. 1995), damages in personal injury cases are too speculative to liquidate before final judgment. The only exception to this rule is if the plaintiff can establish that he or she has suffered the loss of a vested property right. See Alvarado v. Rice, 614 So.2d 498 (Fla.1993).
However, the issue in the instant case is slightly different from the claim raised in Argonaut and the other cases cited above. Unlike Argonaut, the plaintiffs in this case are not claiming that they are entitled to interest from the date of the loss or injury. Rather, the plaintiffs contend that they are entitled to interest for the period between the time when the verdict was rendered and the time when judgment was entered. So although the instant case is technically a "prejudgment" interest case, it is more appropriately labeled a "postverdict" interest case.
With one exceptionGreen v. Rety, 616 So.2d 433 (Fla.1993)no case from this Court has ever permitted "post-verdict" interest. In Green, a plaintiff obtained a libel verdict, but the trial court sua sponte withheld judgment and entered an order of remittitur and an alternative order for a new trial on damages. When the plaintiff refused to accept the remittitur, the trial court ordered a new trial on damages and the plaintiff appealed. The Third District agreed that a remittitur was appropriate, but found that the trial court's remittitur had been excessive. See Rety v. Green, 546 So.2d 410, 417 (Fla. 3d DCA 1989). The Third District decreased the amount to be remitted and directed the trial court to allow the plaintiff a reasonable time within which to accept or reject it. On remand, the plaintiff accepted the modified remittitur. After acceptance, the plaintiff contended that for purposes of postverdict interest the judgment should be entered nunc pro tunc to the date of the original verdict, while the defendant argued that the final judgment should be dated when actually entered, and not as of any earlier date. The trial court disagreed with both positions and entered final judgment effective the date of the Third District's published opinion in the earlier appeal. On appeal, the Third District held that entry of judgment on the reduced jury verdict should be considered effective as of the date of the verdict, with interest accruing from that date. See Rety v. Green, 595 So.2d 1036 (Fla. 3d DCA 1992), approved, 616 So.2d 433 (Fla.1993). The Third District certified the question to this Court. This Court agreed with the Third District, reasoning that pursuant to Florida Rule of Appellate Procedure 9.340(c),[4] the date of the verdict controls and all interest should be computed from the date of the verdict. See 616 So.2d at 435.
The controversy in Green arose because the trial court originally withheld judgment. Since the appellate process can last several months or even years, rule 9.340(c) provides that, in cases such as Green, interest should be computed from the date of the verdict.
In contrast to Green, judgment was entered in the present case. Yet the plaintiffs focus on the delay between the time when the verdict was rendered and when the judgment was entered. However, at the hearing on the plaintiffs' motion for costs and prejudgment interest, the trial court asked, "Was there ever a request for *114 me to enter a judgment by the plaintiff?" When counsel answered "no," the trial court denied the plaintiffs' motion, explaining:
If I would have had a request to enter judgment, I would have entered it. I always enter them even with pending motions, pending motions for new trial or pending motions for judgment, the renewed motions for directed verdict, I always enter the judgments. Then if something changes, I go back and change them.
As the trial court pointed out, the proper procedure in this case would have been to request that the court enter a judgment promptly after the verdict. Thus, we find that, consistent with this Court's precedent, the trial court properly denied the plaintiffs' request for interest between the verdict date and the final judgment date. Our holding is further bolstered by the plain language of section 55.03, Florida Statutes (Supp.1998),[5] which specifically provides that interest does not accrue until the date of the judgment, not verdict. Accordingly, we quash the Second District's decision in Amerace and approve the First District's opinions in Easkold and Rockman.[6]
It is so ordered.
WELLS, C.J., SHAW, HARDING, and LEWIS, JJ., concur.
PARIENTE, J., dissents with an opinion, in which ANSTEAD and QUINCE, JJ., concur.
*115 PARIENTE, J., dissenting.
I respectfully dissent and would follow the lead of the majority of the district courts of appeal that have concluded, consistent with principles of law articulated in our prior cases, that interest from the date of the verdict should be allowed in personal injury cases. The Court has not addressed the precise issue before us today, which focuses on whether to allow prejudgment interest from the date of the verdict.
Although I agree that historically, plaintiffs in personal injury cases have not been entitled to prejudgment interest from the date of the loss, the reason for this historical limitation on the right to recover prejudgment interest in a personal injury case is eliminated once the damages are fixed or liquidated by a jury verdict. Further, I am concerned that the effect of the majority's decision is to require plaintiffs to rush to seek entry of a judgment immediately after a verdict and to require the trial court to allow the entry of the judgment, knowing full well that the judgment amount may be adjusted based on the various postverdict matters such as setoffs, comparative negligence, or Fabre[7] issues. Surely, efficient use of judicial resources would favor the more practical solution of waiting until these postverdict issues are resolved before entering final judgment.
Moreover, if the majority is correct that the prevailing plaintiff is entitled to the entry of judgment immediately upon the receipt of the verdict, that is all the more reason to allow postverdict interest because the entitlement to the entry of judgment is predicated solely upon the fact of the return of the verdict. In other words, if the right to the entry of judgment is based upon the return of the verdict, and the entry of judgment is purely a ministerial act, then it is pure sophistry to suggest that interest not be allowed when the entry of judgment is postponed in order to sort out the postverdict issues.
If the Stallingses had obtained the entry of judgment immediately after the return of the verdict, there is no dispute that the Stallingses would be entitled to interest from the entry of the judgment until the time that postjudgment issues were resolved. Thus, given that the entry of judgment is a purely ministerial act, there is no basis in logic for allowing interest in one instance, but not in the other. The majority would simply require an additional ministerial act after the verdict is returned, i.e., the entry of judgment, but the outcome would essentially be the same because the entry of judgment and the recovery of interest are both predicated upon the return of the verdict.
Thus, I would follow the reasoning of the majority of the district courts that have addressed this issue and allow a plaintiff to recover interest in a personal injury action from the time period between when the jury fixes the amount of damages by its verdict and when a final judgment is entered. This result is entirely consistent with the jurisprudence of the State regarding the historic purpose of prejudgment interest.
In Sullivan v. McMillan, 37 Fla. 134, 19 So. 340 (1896), this Court, in explaining the principle behind prejudgment interest, stated:
There is no reason why a person injured should have a smaller measure of recovery in one case than the other.... On general principles, once admit that interest *116 is the natural fruit of money, it would seem that, wherever a verdict liquidates a claim and fixes it as of a prior date, interest should follow from that date.
Id. at 343 (quoting 1 Theodore Sedgwick, A Treatise on the Measure of Damages § 300 (8th ed. 1891)). We reaffirmed this principle in Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212, 214-15 (Fla.1985), when we recognized:
[S]ince at least before the turn of the century, Florida has adopted the position that prejudgment interest is merely another element of pecuniary damages. While doing so, the Court recognized and rejected an alternative but traditional rationalethat prejudgment interest was to be awarded as a penalty for defendant's "wrongful" act of disputing a claim found to be just and owing. This view is still the rule of some jurisdictions.
(Footnotes omitted.)
Thus, it has long been the law in Florida that in contract actions, and in certain tort cases, once the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of the cause of action. See Jackson Grain Co. v. Hoskins, 75 So.2d 306, 310 (Fla. 1954); Zorn v. Britton, 120 Fla. 304, 162 So. 879, 880 (1935) ("This court has upheld interest on damages to property and for breach of contract from the date of the accrual of the cause of action."). As for the reason for not allowing prejudgment interest from the date of loss in personal injury actions, the Court's explanation in Jackson was simply that "[a]pparently an exception to the allowance of interest has been made in personal injury cases because of the speculative nature of some items of damage, such as mental anguish, and the indefiniteness of items such as future pain and suffering." 75 So.2d at 310.
In this case, the Stallingses seek prejudgment interest only from the date of the verdict, when those items of damages such as pain and suffering or mental anguish were no longer speculative because the amount had been fixed by the jury. They argue that where there is a delay in the entry of the judgment, the failure to award them such interest would result in an uncompensated loss. Not only does the jury verdict fix damages as of the date of the verdict, but also future economic damages awarded by the jury are reduced to present money value calculated as of the date of the verdict. See Fla. Std. Jury Instr. (Civ.) 6.10 (Reduction of Damages to Present Value).[8] Because the verdict fixes both the plaintiff's past and present losses calculated as of the date of trial, a delay in failing to award postverdict interest on a fixed sum of money results in an uncompensated loss to the plaintiff.
Indeed, in Argonaut, this Court reaffirmed that the purpose of an award of prejudgment interest in Florida is to compensate *117 the plaintiff for his or her loss rather than to penalize the defendant. 474 So.2d at 214-15. In Argonaut, after payment of a fire loss claim, the insurer brought a subrogation action against the plumbing company and its insurers, alleging that the negligence of its employee caused the fire. Although the jury returned a verdict in favor of the insurer, the jury also found the insured owner comparatively negligent. See id. The district court held that the existence of comparative negligence made any award of damages uncertain. See id. In reversing the district court, this Court explained that
neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the plaintiff's property. Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor.
Id. at 215 (emphasis supplied). Thus, the Court concluded that "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Id. (emphasis supplied); see also Boulis v. Florida Dep't. of Transp., 733 So.2d 959, 961 (Fla.1999) (discussing Argonaut and Florida's adoption of the "loss theory" of prejudgment interest).
Therefore, where the verdict has liquidated damages, as in this case, any justification from a policy standpoint for treating a personal injury case differently from other tort cases based on the "speculative" or "discretionary" nature of the damages is eliminated. This is consistent with this Court's longstanding recognition of the "loss theory." Argonaut, 474 So.2d at 215. In addition, Argonaut specifically rejected the argument that the uncertainty of the loss prevents an award of prejudgment interest. See id. at 215. Although Argonaut related to preverdict interest, the sound reasoning of that case applies equally to postverdict prejudgment interest, where the verdict itself fixes the amount of damages.
The Fourth District, relying on the reasoning of Argonaut, has addressed the precise issue presented in this case: whether it is proper to award interest in a personal injury case from the date of the verdict through the date of the judgment. See Palm Beach County Sch. Bd. v. Montgomery, 641 So.2d 183, 184 (Fla. 4th DCA 1994). In Montgomery, the trial court did not resolve the posttrial motions immediately. In fact, the trial court did not enter a final judgment until "some six months after the entry of a jury verdict that liquidated the amount of plaintiffs' damages." Id. In the final judgment, the trial court included an award of prejudgment interest on the amount of the damages fixed by the jury from the date of the verdict to the date of the final judgment. See id.
The Fourth District began its analysis by explaining that this Court in Argonaut established the following principles:
1. an unliquidated claim becomes liquidated and susceptible of bearing prejudgment interest when a jury verdict has the effect of fixing the amount of damages;
2. once a verdict has liquidated damages as of a date certain, computation of prejudgment interest is merely a ministerial mathematical computation to be performed by the court; and
3. prejudgment interest is calculated at the same rate as post-judgment interest.
Id. Accordingly, the Fourth District held that "a successful claimant is entitled to prejudgment interest on such a claim from *118 the jury verdict to the entry of judgment." Id.; see also Budget Rent-A-Car Sys., Inc. v. Castellano, 764 So.2d 889, 892 (Fla. 4th DCA 2000) (affirming the award of prejudgment interest from the date of the jury's verdict).
The Fourth District is not alone in its determination that interest from the date of the verdict should be allowed in personal injury cases. In fact, the majority of appellate courts have concludedcontrary to the determination of the majority in this casethat interest should run from the time of the verdict, rather than from the entry of judgment. For example, in a series of cases, including the one on review here, the Second District has followed the reasoning of the Fourth District and concluded that interest runs from the date of the verdict. See Amerace, 753 So.2d at 593 (citing Montgomery, 641 So.2d at 183); Fisher v. Ackerman, 744 So.2d 582, 583 (Fla. 2d DCA 1999); see also Perdue Farms, Inc. v. Hook, 777 So.2d 1047, 1054 (Fla. 2d DCA 2001) (citing Amerace and determining that because damages were liquidated by the date of the jury's verdict, prejudgment interest should be awarded from that date to the date of the final judgment); Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc., 805 So.2d 941, 945 (Fla. 2d DCA 2001) (remanding for recalculation of the prejudgment interest from the date of the jury's verdict). Likewise, the Fifth District recently stated:
Lastly, on cross-appeal, Smith argues that the trial court erred by failing to award her interest on the jury verdict from the date the verdict was rendered until the date the amended final judgement was entered. We agree with Smith that her damages were liquidated once the jury returned its verdict and therefore interest should have been awarded as of that date. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985) (holding that an unliquidated claim becomes liquidated and susceptible of bearing prejudgment interest when a jury verdict has the effect of fixing the amount of damages). Accordingly, we remand this matter to the trial court with instructions to correct the interest award.
Tran v. Smith, 27 Fla. L. Weekly D958, D959, ___ So.2d ___, 2002 WL 726633 (Fla. 5th DCA Apr.26, 2002).
What is common to these district court cases, and distinguishes them from this Court's prior opinions, is that there is a delay in the entry of the final judgment after the verdict liquidates the damages. Although at one time it may have been a relatively simple task to calculate the net judgment based on the jury verdict and obtain a signed judgment from the court virtually simultaneously with the verdict, this may no longer be a reality in many personal injury cases. The many recent appellate cases cited in this opinion show this scenario is occurring more frequently. See, e.g., Checkers, 805 So.2d at 941; Perdue, 777 So.2d at 1047; Fisher, 744 So.2d at 582; Castellano, 764 So.2d at 889; and Montgomery, 641 So.2d at 183. With the advent of comparative negligence, the statutory right to setoffs, the determination of the effect of offers of judgment and the multiple complexities of Fabre, posttrial motions may not be resolved by the trial court for weeks or, as in this case, even months after the jury renders a verdict. However, the fact that the amount of the ultimate verdict may be reduced for reasons such as comparative negligence is no more speculative from the standpoint of prejudgment interest than the reasoning we rejected in Argonaut.
Furthermore, allowing postverdict interest is consistent with Florida Rule of Appellate Procedure 9.340(c), which provides:

*119 (c) Entry of Money Judgment. If a judgment of reversal is entered that requires the entry of a money judgment on a verdict, the mandate shall be deemed to require such money judgment to be entered as of the date of the verdict.

(Emphasis supplied.) This Court addressed the operation of this appellate rule in Green v. Rety, 616 So.2d 433, 434-35 (Fla.1993). In that case, the certified question asked whether rule 9.340 applied "where an appellate court-ordered remittitur requires entry of judgment in an amount less than the full amount of the jury's verdict?" Id. at 434. The Court answered the question in the affirmative and determined that "[t]he date of the verdict controls under the rule." Id. at 435.
Under the appellate rule, if the trial court in this case had set aside the verdict and that decision had been reversed on appeal, the Stallingses would have had the right to receive interest from the date of the entry of the verdict, and not from the date the trial court entered the new judgment. Thus, although the majority opinion attempts to differentiate Green on the basis that the "trial court originally withheld judgment" and "the appellate process can last several months or even years," majority op. at 113, the purpose served by the rule applies equally where there has been a delay in the entry of a judgment on a verdict as a result of postjudgment motions.
The majority also relies on section 55.03, Florida Statutes (Supp.1998), to support its holding that interest does not accrue until the date that the trial court enters the judgment. However, section 55.03 does not control the resolution of this issue. That statute always has existed in various forms as a complement to the court's common law and related rules regarding interest awards, not to the exclusion of them. Indeed, when the Legislature first enacted this provision in 1866, the statute was entitled "an act to untrammel Capital and to repeal all laws on Usury" and it provided:
Section 1. Be it enacted by the Senate and House of Representatives of the State of Florida in General Assembly convened, That hereafter it shall not be usury to loan or to borrow money, bonds, or notes, at rates beyond that now allowed by law; Provided, That in all cases where interest shall accrue without a contract having been made, and on judgments, the rates of interest shall remain as now fixed, or may be hereafter fixed by law.
Ch. 1562, § 1, Laws of Fla. (1866). Thus, the focus of the statute was on the amount of interest charged, and not on when interest begins to accrue.
The Legislature has made several changes to section 55.03 throughout the years, and in 1979, it added section 2 as follows:
(2) Any process, writ, judgment or decree, which is directed to the sheriffs of the state to be dealt with as execution, shall bear, on the face of the writ, judgment or decree, the rate of interest which it shall accrue from date of judgment until payment.
Ch. 79-396, § 8, Laws of Fla. As the Fifth District explained when discussing the 1981 version of the statute,[9] "[i]t is apparent *120 that the original purpose of this subsection was to indicate to the sheriff whether the legal rate of interest was being assessed or whether a lesser contract rate applied." Keanie v. Goldy, 698 So.2d 1264, 1266 (Fla. 5th DCA 1997).
There is nothing in this statute or the history of the amendments that suggests that section 55.03 is aimed at limiting the right to recover prejudgment interest. If the statute were so limited, Florida Rule of Appellate Procedure 9.340(c), which provides for the running of the interest from the date of the verdict rather than the judgment, would be impermissibly in conflict with that statute. Moreover, section 687.01, Florida Statutes (1998), establishes the statutory rate for all other interest awarded, including prejudgment interest, to be the same rule as for postjudgment interest.[10] Thus, allowing an award of postverdict prejudgment interest is not inconsistent with section 55.03.
Furthermore, the statement made in Lumbermens Mutual Casualty Co. v. Percefull, 653 So.2d 389, 390 (Fla.1995), relied on by the majority, that "tort claims are generally excepted from the rule allowing prejudgment interest, primarily because tort damages are generally too speculative to liquidate before final judgment," is dicta, as prejudgment interest was not the issue in Lumbermens. In fact, it is the verdict and not the judgment that liquidates damages for all cases. Indeed, in Sullivan, 19 So. at 343, we specifically stated that a "person injured" should receive interest from the time a verdict liquidates the damage claim. Although it is true that intangible damages may be considered "speculative" before verdict, as discussed above, once the verdict is entered, personal injury claims are no different than any other claim for damages that may be subject to postverdict adjustments.
Finally, although the majority appears to place blame on the Stallingses for the delay in the entry of the judgment, as stated above, the purpose of an award of prejudgment interest in this State is to compensate for an uncompensated loss rather than to penalize. Further, even if the "fault" of the party in the delay in entry of the judgment was a factor to consider, in this case it was Amerace that filed the posttrial motion for directed verdict, motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial on June 22, 1998. There is nothing improper about Amerace's filing posttrial motions; however, because of these posttrial motions filed by Amerace, the Stallingses anticipated that there would be a delay in the entry of a final judgment and thus filed a motion on July 9, 1998, requesting interest on the entire verdict from the date the trial court entered the verdict. In fact, the trial court did not rule on Amerace's posttrial motions until November 5, 1998.
It is true that the trial court indicated at the time it denied the Stallingses' motion for postverdict interest that it would have been willing to enter final judgment before the posttrial motions were resolved. However, in light of the fact that, in most cases, issues of setoffs, comparative negligence and Fabre adjustments will affect the amount of the final judgment, the orderly disposition of a case may often require that pending motions be resolved before the trial court is willing to enter final judgment. Further, nothing changes the fact that the damages were liquidated *121 as of the date of the verdict and that the reasoning for allowing interest on liquidated amounts applies to this case.
Therefore, because in this case the amount of damages was fixed at the time that the jury entered its verdict and the trial court did not enter judgment until several months later because of the pending posttrial motions filed by the parties, the computation of the interest involved nothing more than a mathematical calculation. Under these circumstances, interest should be allowed from the date of the verdict.
ANSTEAD and QUINCE, JJ., concur.
NOTES
[1] Stallings was injured during an accident that occurred as he led a crew of employees of the Tampa Electric Company ("TECO") in its transfer of power lines and other devices as part of a road-widening project.
[2] The damages were as follows: pain and suffering$500,000; past medical expenses $250,000; and loss of consortium$250,000.
[3] The parties stipulated at the beginning of the trial that any amount awarded by the jury for medical expenses would be reduced to $53,059.98, the amount paid by TECO for Stalling's medical expenses.
[4] Florida Rule of Appellate Procedure 9.340(c) states:

If a judgment of reversal is entered which requires the entry of a money judgment on a verdict, the mandate shall be deemed to require such money judgment to be entered as of the date of the verdict.
[5] Section 55.03 provides in its entirety:

(1) On December 1 of each year beginning December 1, 1994, the Comptroller of the State of Florida shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Comptroller shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming year. The initial interest rate established by the Comptroller shall take effect on January 1, 1995, and the interest rate established by the Comptroller in subsequent years shall take effect on January 1 of each following year. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Comptroller for time periods after January 1, 1995, for which interest is due. Nothing contained herein shall affect a rate of interest established by written contract or obligation.
(2) Any judgment for money damages or order for a judicial sale and any process or writ directed to a sheriff for execution shall bear, on its face, the rate of interest that is payable on the judgment. The rate of interest stated in the judgment accrues on the judgment until it is paid.
(3) The interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid.
(4) A sheriff shall not be required to docket and index or collect on any process, writ, judgment, or decree, described in subsection (2), and entered after the effective date of this act, unless such process, writ, judgment, or decree indicates the rate of interest. For purposes of this subsection, if the process, writ, judgment, or decree refers to the statutory rate of interest described in subsection (1), such reference shall be deemed to indicate the rate of interest.
[6] The other issue that Amerace now raises on review to this Court concerns expert testimony, but Amerace never sought jurisdiction in this Court on that issue. That issue is not otherwise a basis for our jurisdiction, and the Second District never addressed that issue. Although we have the authority to consider issues other than those upon which jurisdiction is based, we decline to do so in this case, and, instead, we limit our review to the conflict issue. See Cargle v. State, 770 So.2d 1151, 1155 n. 3 (Fla.2000); Weygant v. Fort Myers Lincoln Mercury, Inc., 640 So.2d 1092, 1094 n. 3 (Fla.1994).
[7] Fabre v. Marin, 623 So.2d 1182, 1185 (Fla. 1993) (holding that fault must be apportioned among all responsible entities who may have contributed to an accident, even though not all of them have been joined as defendants), receded from on other grounds, Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249 (Fla.1995).
[8] Florida Standard Jury Instruction 6.10 provides:

6.10. REDUCTION OF DAMAGES TO PRESENT VALUE
Any amount of damages which you allow for [future medical expenses], [loss of ability to earn money in the future], [or] [ (describe any other future economic loss which is subject to reduction to present value) ] should be reduced to its present money value [and only the present money value of these future economic damages should be included in your verdict] [and both the amount of such future economic damages and their present money value should be stated in your verdict].
The present money value of future economic damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate (claimant) for these losses as they are actually experienced in future years.
[9] The 1981 version, cited below, is substantially similar to the 1979 version and is substantially similar to the version in effect today:

(2) Any process, writ, judgment, or decree which is directed to the sheriffs of the state to be dealt with as execution shall bear, on the face of the process, writ, judgment, or decree, the rate of interest which it shall accrue from date of judgment until payment.
§ 55.03(2), Fla. Stat. (1981).
[10] Section 687.01 provides: "In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03."